FILED
SEP 22 2006
T.S. McGREGOR, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JERRY COLEMAN FRANKLIN AND CONNIE SHERRY FRANKLIN, <br><br> Debtors. | NO. 05-05200 |
| U.S. BANK, <br>           Plaintiff, <br> vs. <br> JERRY COLEMAN FRANKLIN AND CONNIE SHERRY FRANKLIN, <br>           Defendants. | ADV. NO. A05-80174-JAR <br><br> MEMORANDUM OPINION |

Jerry and Connie Franklin (Debtors) filed a Chapter 7. U.S. Bank (Bank) timely filed an adversary proceeding objecting to discharge of a portion of the Franklin credit card debt to the bank.

The Franklins' Schedule I reflects current income of $3,828.25 a month, with all of the income being provided by Jerry Franklin from his job as a telephone technician. The Franklins' Schedule J reflects current expenditures of $3,793.16 a month, with none of that expense being used to pay for credit card debt.

The defendants sought to discharge a substantial amount of credit card debt. Of the $134,946.39 of their listed unsecured debt, approximately $75,000.00 was for credit cards. Only U.S. Bank objected to the discharge of its debt.

U.S. Bank objects to the discharge of debt incurred by the debtors on three different accounts (a Visa Platinum account, a Reserve Line account, and a Credit Line Agreement account). U.S. Bank asserts that $12,969.06 is non-dischargeable debt based on 11 U.S.C. § 523(a)(2) (fraud), 11 U.S.C. § 523(a)(6) (willful and malicious injury), and declaratory

1

relief for breach of contract.

A trial was heard on this matter on August 22, 2006.

I.  FACTS:

1. The debtors filed bankruptcy on June 28, 2005.

2. The complaint alleges, and the debtors do not dispute, the following charges:

    4/14/05: $ 575.00

    4/25/05: $ 348.96

    4/26/05: $ 185.53

    4/29/05: $ 289.85

    5/03/05: $3,200.00

    5/26/05: $2,500.00

    5/26/05: $4,069.72

    6/03/05: $1,400.00

    6/03/05: $ 200.00

    7/25/05: $ 200.00

---

Total of:               $12,969.06

All of the above charges were made very close to the time of filing the bankruptcy. The Court notes that the $200.00 debt incurred on July 25, 2005, is a post-petition debt that is not discharged in the bankruptcy regardless of whether or not fraud has occurred.

3. Jerry Franklin stated at his deposition that the debtors filed bankruptcy 60-90 days after first talking to an attorney. At trial, he testified that he did not remember when he first talked to an attorney about bankruptcy. It is more probable than not, that one of the Franklins consulted an attorney, or at least someone with legal knowledge, before incurring the above charges.

4. As alleged in the exhibits in the complaint, and not disputed by the Franklins, there are approximately 40 charges incurred.

5. $12,969.06 is a large amount of charges for a short period of time.

6. Connie Franklin admitted in her deposition that her financial condition was bad.

2

7. Page 50 of Plaintiff's Trial Exhibits reflects that the Credit Line account had a balance of $20,197.56 and a credit line of $20.000.00 as of June 2, 2005. The charges exceeded the credit limit on the Credit Line account. Page 53 of Plaintiff's Trial Exhibits reflects that the Visa Platinum account had a balance of $15,216.11 and a credit line of $16,500.00 as of June 9, 2005. Page 62 of Plaintiff's Trial Exhibits reflects that the balance had increased to $16,370.58 by July 7, 2005, but this is still below the credit line. The Reserve Line account was for overdraft protection. Theresa Allen, a manager of U.S. Bank, testified that the credit limit was $1,100.00 for the Reserve Line and page 62 of Plaintiff's Trial Exhibits reflects that the Reserve Line had a balance of $1,150.19 on July 7, 2005. The charges did slightly exceed the credit limit on the Reserve Line account.

8. The complaint exhibits, which are not disputed by the Franklins, reflect that four charges in a single day were common.

9. There is no dispute that Jerry Franklin was employed. Connie Franklin was not employed at the time the charges were incurred. She testified that she thought that she would begin training for employment in June, 2005. The Court finds that credible.

10. Connie Franklin testified that she had a good level of business ability, and that she had ran her own business. She is at least as financially sophisticated as the average consumer debtor.

11. There was a sudden change in the Franklins' buying habits. Plaintiff's Trial Exhibits page 52 reflects that the Franklins incurred charges of $6,059.00 from May 3, 2005, to June 2, 2005, on the Credit Line Account.

12. Theresa Allen, the bank's manager, testified that Jerry Franklin stopped automatic deposit of his paycheck in May, 2005. The Franklins provided no explanation as to why they stopped the automatic deposit. The Franklins increased their buying habits at virtually the same time as they discontinued automatic deposits.

13. The testimony reflects that the bulk of purchases/cash advances were to help the Franklins' son who was having legal difficulties. The Franklins also helped their daughter move, and made routine consumer purchases. None of the purchases/cash advances were used for luxuries.

3

II. APPLICABLE LAW:

Under 28 U.S.C. § 157(b)(1), bankruptcy courts may hear and determine core proceedings. This is a core matter pursuant to 28 U.S.C. § 157(b)(2) as it is an action to determine the dischargeability of a particular debt. Jurisdiction to hear dischargeability actions is vested in the federal district courts under 28 U.S.C. § 1334(b) and can be heard by the bankruptcy courts under 28 U.S.C. § 157(a).

The creditor seeking to have the debt excepted from discharge has the burden of proof. In re Littleton, 942 F.2d 551, 554 (9th Cir. 1991). The burden of proof in this non-dischargeability action is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 290, 111 S.Ct. 654, 661 (1991). In determining whether a particular debt falls within one of the discharge exceptions of 11 U.S.C. § 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. In re Miller, 39 F.3d 301, 304 (11th Cir. 1994).

Liabilities are excepted from discharge under 11 U.S.C. § 523(a)(2)(A) for any debt for money, property or services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation or actual fraud. Actual fraud consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another. 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][e] (15 ed. 2006).

Actual fraud under 11 U.S.C. § 523(a)(2)(A) requires a showing of specific intent to deceive the plaintiff. In re Apte, 180 B.R. 223, 228 (9th Cir. B.A.P. 1995). In the Ninth Circuit, a totality of circumstances approach has been used to determine fraudulent intent in the 11 U.S.C. 523(a)(2)(A) context. In re Eashai, 87 F.3d 1082, 1087 (9th Cir. 1996). In re Dougherty, 84 B.R. 653, 657 (9th Cir. B.A.P. 1988) provides a non-exclusive list of twelve factors for a bankruptcy court to consider in order to establish whether a debtor had fraudulent intent. These factors are:

1. The length of time between the charges made and the filing of the bankruptcy.

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before charges were made.

3. The number of charges made.

4

4. The amount of charges.

5. The financial condition of the debtor at the time the charges were made.

6. Whether the charges were above the credit limit of the account.

7. Whether the debtors made multiple charges on the same day.

8. Whether the debtor was employed.

9. The debtor's prospects for employment.

10. Financial sophistication of the debtor.

11. Whether there was a sudden change in the debtor's buying habits.

12. Whether the purchases were made for luxuries or necessities.

Intent to defraud may be inferred from circumstantial evidence and implausible testimony. In re Kimzey, 761 F.2d 421, 424 (7th Cir. 1985). The particular circumstances of the case and the demeanor and credibility of the witness play a very large role in determining fraudulent intent. In re Kuku, 225 B.R. 778, 786 (10th Cir. B.A.P.1998).

11 U.S.C. § 523(a)(6) excepts from discharge any debt for willful and malicious injury by debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6) may apply to a broad range of conduct causing harm to people or property, subject to the limitation that the injury be willful and malicious.

The word willful means a deliberate or intentional act that necessarily leads to injury. An injury may be malicious within this provision if it was wrongful and without just cause or excuse. 4 COLLIER ON BANKRUPTCY ¶ 523.12[2] (15 ed. 2006). The word willful modifies the word injury, indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Kawaauhau v. Geiger, 523 U.S. 57, 61,118 S.Ct. 974, 977 (1998). Nevertheless, subjective intent may be gleaned from objective factors. In re Jacks, 266 B.R. 728, 742 (9th Cir. B.A.P. 2001). The willful injury requirement of 11 U.S.C. § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct. A malicious injury involves (1) a wrongful act (2) done intentionally (3) which necessarily causes injury, and (4) is done without just cause or excuse. In re Jercich, 238

5

F.3d 1202, 1208-1209 (9th Cir. 2001).

11 U.S.C. § 523(a)(6) covers a broader range of conduct than 11 U.S.C. 523 § (a)(2)(A). Debts procured by fraud may be nondischargeable under 11 U.S.C. § 523(a)(6) as arising from conduct causing willful and malicious injury. 4 COLLIER ON BANKRUPTCY ¶ 523.12[1] (15 ed. 2006). A debtor's harmful acts can form the basis of a nondischargeability claim under both 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(6). Apte, 180 B.R. at 231.

III. CONCLUSIONS:

The testimony of the Franklins lacked credibility. They repeatedly used the mantra "I don't remember" and "I don't know" when asked routine questions about the bankruptcy proceeding and the accounts at issue in this adversary proceeding. They intentionally stopped the automatic pay deposit at virtually the same time they increased the charges, an indication they did not intend to repay the charges. Both Jerry Franklin and Connie Franklin testified that Connie Franklin was the spouse that routinely paid the bills. Connie Franklin's testimony that she intended to pay back the charges at issue is not credible in light of the unexplained stopped automatic pay deposit and increased charges.

The Franklins intentionally deceived the bank and committed actual fraud. Injury to the bank was substantially certain to occur as a result of their conduct. The Franklins' conduct was wrongful, done intentionally, necessarily caused injury, and was done without just cause or excuse. The Court finds that the $12,969.06 complained of is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).

Plaintiff's Trial Exhibits page 78 reflects that the Franklins wrote a check for $966.00 on April 14, 2005, to the IRS as tax payment on their interest plus checking account. On oral motion by Plaintiff, the Court allowed the complaint to be amended to allege that this check be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(14) (debt incurred to pay a tax to the United States), in addition to the $12,969.06 already alleged to be non-dischargeable in the complaint. Theresa Allen, the bank's officer, testified that she couldn't tell the origin of the funds that paid the IRS. There is no evidence that the taxes were even paid by a loan. The Court finds that the $966.00 is dischargeable.

6

1   Plaintiff also asks for attorney fees. "We consistently have refused to award fees when the substantive legal question was governed by federal bankruptcy law, rather than basic contract enforcement questions, even when the underlying contract contains an attorney fee provision enforceable under state law." In re Deroche, 434 F.3d 1188, 1191 (9th Cir. 2006). The trial here only concerned federal bankruptcy law. There were no legal questions of contract enforcement, and Plaintiff's claim for relief in the complaint seeking declaratory relief for breach of contract appears to exist for the limited purpose of making some kind of an argument for attorney fees. The attorney fees request is denied.

This memorandum opinion constitutes the Court's finding of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Court will issue a judgment order accordingly.

Done this ___ day of September, 2006.

_____
BANKRUPTCY JUDGE